IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| ARC CONTROLS, INC.,<br>    Plaintiff,<br><br>v.<br><br><br>M/V NOR GOLIATH, *in rem*, and<br>GOLIATH OFFSHORE HOLDINGS PTE.<br>LTD., *in personam* | ) CASE NO. 1:19-cv-391-LG-RHW<br>)<br>) *Consolidated with:*<br>) CASE NO. 1:19-cv-395-HSO-JCG<br>)<br>)<br>)<br>)<br>) |

**CANDY APPLE, LLC'S REBUTTAL MEMORANDUM IN
FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON CLAIMS AGAINST *IN REM* DEFENDANT M/V NOR GOLIATH**

Intervenor Candy Apple, LLC ("Candy Apple"), submits this Rebuttal Memorandum in Response to the Opposition (ECF 482 & 483) filed by Goliath Offshore Holdings PTE LTD ("Goliath"), and in further support of its Motion for Summary Judgment (ECF 443).

### I.    Goliath's Interpretation of CIMLA/Maritime Lien Law is Fundamentally Wrong.

Under the CIMLA, a person claiming a maritime lien must demonstrate that it (i) supplied goods or services that are "necessaries" within the meaning of the CIMLA; (ii) supplied those "necessaries" "to a vessel;" and (iii) did so "on the order of the owner or a person authorized by the owner."[1]   In its Opposition, Goliath does not dispute that Candy Apple has satisfied the CIMLA's first prong (that the services provided by the M/V CANDY APPLE were "necessaries" under the Fifth Circuit's binding decision in *Trico Marine*)[2] or third prong (that those "necessaries" were ordered by Epic, which was authorized to do so by Goliath, owner of the NOR GOLIATH). Instead, Goliath focuses on the second prong, but misstates the proof required to satisfy it.

---

[1] *ING Bank N.V. v. Bomin Bunker Oil Corp.*, 953 F.3d 390, 393-94 (5th Cir. 2020) (quoting 46 U.S.C. § 31342).

[2] "Services of transporting…supplies[/]equipment…essential to sustain the crew[/]operations aboard [a serviced vessel are CIMLA] necessaries." *Trico Marine Operators, Inc. v. Falcon Drilling Co.* 116 F.3d 159, 162 (5th Cir. 1997).

Goliath states that Candy Apple "must prove that the M/V CANDY APPLE was a 'necessary' to the M/V NOR GOLIATH" by showing that "the M/V CANDY APPLE was earmarked for or exclusively provided to the M/V NOR GOLIATH."[3]  This is a fundamentally wrong statement of the maritime lien framework.  It is not that the CANDY APPLE *itself* must be "provided to" the NOR GOLIATH; it is ***the supply vessel services performed by the CANDY APPLE*** that must be provided to the NOR GOLIATH.[4]  Goliath misstates this concept in an effort to argue non-earmarking – i.e. that because the CANDY APPLE went to other places/vessels, the CANDY APPLE *itself* was not earmarked to the NOR GOLIATH.  But that is not how CIMLA/ maritime lien law works.  The relevant inquiry (under *Trico Marine*) is not whether *the CANDY APPLE itself* was provided to the NOR GOLIATH, but rather whether ***the CANDY APPLE's services*** were provided to/earmarked for the NOR GOLIATH.  The undisputed facts show this is exactly what happened: CANDY APPLE provided identifiable, segregated services specifically to the NOR GOLIATH and earmarked as such by Epic, Candy Apple, and the NOR GOLIATH *itself*.

## II.  **CANDY APPLE was Specifically Hired for/Provided Services to the NOR GOLIATH.**

Goliath's opposition misleadingly suggests that the CANDY APPLE was hired "for the 2019 [GOM] platform decommissioning season."[5]  The CANDY APPLE was only hired for a 26.51 days, and specifically to provide services to the NOR GOLIATH.[6]  Thus, the implication by Goliath that the CANDY APPLE was assisting with various projects around the Gulf of Mexico over the course of a "season" is misleading.

---

[3] ECF 483 at p. 2.

[4] *See ING Bank N.V.*, 953 F.3d at 393-94.

[5] ECF 483 at p. 1.

[6] The original time estimate on the Charter was for only 5-10 days (*see* ECF 442-7, Candy Apple 000064-65), but the CANDY APPLE remained on charter beyond this original estimate. *See, e.g.*, ECF 442-11, Email correspondence dated June 4, 2019 (Candy Apple 000196).

2

Goliath also suggests that the "informal" text messages between Joey Trahan (Epic's logistics coordinator) and Andrew Henry of Kilgore did not earmark the Charter specifically to the NOR GOLIATH because the text messages were allegedly exchanged after the Charter was executed.[7] However, Henry confirmed that, although the Charter was apparently backdated to May 14, 2019, Trahan only sent the Charter document *after* the May 15-16 text message exchange:

> Q: Let me scroll down to the bottom. At the bottom it looks like Joey said: I just forwarded you the charter. Please sign and send back when you can. And we looked at the short form charter, so Candy starts at 64. I will pull that back up. Was this the charter that the text messages were referring to, do you remember?
>
> A. To my knowledge, yes.
>
> Q. And so to your understanding is it fair to say that … the charter was for the CANDY APPLE to work for the GOLIATH based on the text messages?
>
> A. That's correct. Yes, that is correct.[8]

And, Andrew Henry testified that these types of "informal" exchanges ("even down to a simple email correspondence to charter a charter boat") are standard in the industry.[9] Henry further confirmed that the text message exchange specified the limited scope of the Charter:

> Q. So can you explain to me what this text message chain is?
>
> A. Joey, I think originally, as I said, contacted me by phone, then we corresponded by text. I was obviously asking him the location where we are going. … Andrew, obviously his response, Candy Apple so on and so forth. GOLIATH should contact them. So at that point the GOLIATH was telling the boat where to go, giving orders to the vessel and I said roger…
>
> Q. So by GOLIATH giving directions to the vessel, you were under the understanding … that the CANDY APPLE was to go to the GOLIATH for the work it was to perform?
>
> A. Correct.[10]

---

[7] ECF 483 at p. 4.

[8] ECF 442-9, Henry Depo., at p. 44, l. 20-p. 45, l. 10.

[9] Exhibit A, Henry Depo, at p. 26, ll. 11-15.

[10] ECF 442-9, Henry Depo., at p. 44, ll. 2-19.

It is legally irrelevant that the short-form Charter order does not mention the NOR GOLIATH. Although the CANDY APPLE was broadly chartered to Epic, it provided services that were *expressly* ordered by Epic (as authorized by Goliath) for the NOR GOLIATH.[11] Additionally, whether the CANDY APPLE was actively providing services to the NOR GOLIATH or standing by awaiting instructions is also legally irrelevant. The Fifth Circuit has recognized that the supply vessel service "necessaries" like those provided by the CANDY APPLE to the NOR GOLIATH include charges for active services in transporting materials/personnel to an offshore vessel, **as well as charges for "standby" time** awaiting orders to provide such necessary transport services.[12]

And even putting aside the text message exchange between Henry and Trahan, all of the documents and testimony in the record show that the CANDY APPLE's supply vessel services were specifically earmarked to the NOR GOLIATH. For example, the bottom left portion of Epic Purchase Order No. 35237 **specifically lists "GOLIATH" as the "SHIP TO" location**[13] (just as Epic's Purchase Order No. 34929 for the EXPLORER lists the "EXPLORER" as the "SHIP TO" location[14]). Goliath's statement that the Purchase Order "notably makes no mention of the NOR GOLIATH or any other vessel"[15] is a misrepresentation of the record.

---

[11] ECF 442-9, Henry Depo., at pp. 43-45 and Exhibit 8 to Henry Depo (Candy Apple 000117-120).

[12] *See Trico Marine Operators, Inc.* 116 F.3d at 162 *affirming Trico Marine Operators, Inc.,* 1996 WL 96883, at *2 (holding that offshore supply vessel service "necessaries" included "[a]ll time spent by th[e] supply vessels … in support of the [activities of another vessel engaged in offshore operations] including time spent actually loading and unloading materials, shuttling back and forth between the shore and [the other vessel], or standing by waiting for the next available opportunity to work"); *see also La. Int'l Marine, L.L.C. v. Drilling Rig Atlas Century*, No. 11-186, 2012 WL 4718558, at *6 (S.D. Tex. Aug. 21, 2012), *report and rec. adopted as modified*, 2012 WL 13156997 (S.D. Tex. Sept. 24, 2012) ("transit and standby expenses have been deemed lienable" within the Fifth Circuit under *Trico Marine* decisions).

[13] ECF 442-8, Epic Purchase Order dated May 30, 2019 (Candy Apple 000116).

[14] ECF 482-11.

[15] ECF 483 at p. 6.

Further, the "Administrator" for the GOLIATH specifically and directly ordered the CANDY APPLE where/when to go and who/what to bring to/from the NOR GOLIATH.[16] And, all of the invoicing,[17] correspondence from Epic,[18] daily progress reports ("DPRs"),[19] vessel logs and manifests,[20] etc. show that the CANDY APPLE was providing services specifically to the NOR GOLIATH or standing by at the dock awaiting instructions from the Goliath "Administrator."

Goliath also asserts that because "Candy Apple continued to make deliveries of goods and equipment for use by other vessels in the field hired by Epic[,]" the Candy Apple did not provide "necessaries" specifically to the NOR GOLIATH.[21] Goliath would have the Court believe that Epic was directing the CANDY APPLE haphazardly all over the Gulf of Mexico, but that is not what happened. Epic sent the CANDY APPLE specifically to service the NOR GOLIATH, pursuant to specific charter documents, communications, and a unique Purchase Order (No. 35237) specific to the NOR GOLIATH. And while it is true that Epic also sent the CANDY APPLE to another vessel (the EXPLORER) during the relevant timeframe, that work was separately invoiced and allocated **by Epic itself** to a *separate, unique Purchase Order* (No. 34919) for that work.[22]

---

[16] *See, e.g.,* ECF No. 442-11;

[17] *See, e.g.*, ECF 442-1, Meche Declaration, at ¶ 13 and Exhibit 2 to Meche Declaration, Invoices (ECF 140-1), at PDF pp. 2, 30 *et seq.*(invoices issued for CANDY APPLE'S services between between 5/15/19 and 6/11/19 all reference Epic's "Purchase Order" No. 35237, which was *specifically* "earmarked" to the NOR GOLIATH, and the backup documentation provided with the invoices all specifically indicate services to the NOR GOLIATH);

[18] ECF 442-11, Email correspondence dated June 4, 2019. Further, as this email correspondence indicates, references to Platform "WC 548C" in the logs/manifests indicate the platform that the NOR GOLIATH was in the process of decommissioning during the relevant timeframe. *See also* ECF 442-10, Email Correspondence, *in globo*.

[19] ECF 442-14, Daily Vessel Logs (GOLIATH 01033-34 (5/16/19 through 5/17/19), 1037 (5/20/19), 1039 (5/22/19), 1041 (5/24/19), 1043-46 (5/27/19 through 5/31/19), 1049-50 (6/3/19 through 6/4/19), 1053-56 (6/8/19 through 6/11/19)); ECF 442-15, Epic Daily Project Reports for the NOR GOLIATH.

[20] *See* ECF 442-19, Daily Master's Logs/Cargo Manifests, *in globo* (Candy Apple 000139, 141, 143, 147, 150, 155, 156-159, 165, 172, 176). *See also* ECF 442-20, Rough Logs (Candy Apple 000086, 88, 92, 95, 104-06, 109, 111).

[21] ECF 483 at p. 1.

[22] Goliath also makes the speculative suggestion that the Candy made runs between Epic's shoreside bases (ECF 483 at p. 3). This is also inaccurate and there is absolutely no support in the record for this.

And Goliath's pointed suggestion that Candy Apple "fail[ed] to mention" the Purchase Order related to the EXPLORER **is flatly false**.[23] In fact, Candy *explicitly* discussed the separate supply vessel services that CANDY APPLE provided to the Epic EXPLORER, and the separate Purchase Order that Epic issued for the EXPLORER-related work, throughout its Memorandum in Support. And this is precisely because Epic's issuance of the separate Purchase Order for the EXPLORER *supports* Candy Apple's claim for a lien against the NOR GOLIATH:

> [T]he CANDY APPLE serviced another Epic vessel (the EXPLORER) besides the NOR GOLIATH; but Candy Apple's invoices clearly indicate that the roughly day and a half (May 14- 15, and part of May 17, 2019) during which the CANDY APPLE was providing services to the EXPLORER were segregated and billed separately – **and under a different Epic-issued Purchase Order (No. 34929)** - from the amounts earmarked for transportation services to the NOR GOLIATH (ECF No. 140-1, PDF pp. 1-2) billed under Epic Purchase Order No. 35237. Candy Apple is not seeking recovery here for any amounts allocable to … the EXPLORER, or fuel consumed during such services. That said, Epic's issuance of a separate Purchase Order to which the EXPLORER services were billed further confirms that the CANDY APPLE services/costs were separately "earmarked" individually to the NOR GOLIATH and separately to the EXPLORER.[24]

And notably, the EXPLORER Purchase Order specifically delineates *each of the two runs* made to the EXPLORER by the CANDY APPLE,[25] while the NOR GOLIATH runs do not delineate each of the multiple runs made to the NOR GOLIATH.[26] In other words, it shows that the EXPLORER runs were just one-off, specifically tracked/segregated work, and that the general charter of the CANDY APPLE was for the NOR GOLIATH (both facts which were confirmed by Andrew Henry and Micah Meche in their deposition testimony).[27]

---

[23] ECF 483 at p. 6.

[24] ECF 443, pp. 17-18, n. 68 (emphasis in original).

[25] ECF 482-11.

[26] ECF 442-8, Epic Purchase Order dated May 30, 2019 (Candy Apple 000116).

[27] ECF 489-1, Henry Depo., at p. 17, l. 14-p. 18, l. 14; p. 32, l. 16-p. 33, l. 1-6; ECF 489-2, Meche Depo., at p. 33, l. 24-p. 34, l. 20.

Goliath additionally claims that Candy Apple "fails to mention that its contemporaneously issued invoices make no mention of servicing the NOR GOLIATH…"[28] This is another misrepresentation of the record. The invoices issued by Candy Apple/Candy Fleet attached backup documentation, including the Epic Purchase Order No. 35237 (specifically listing the "GOLIATH" as the "SHIP TO" location),[29] and logs, manifests, etc. specifically and unequivocally identifying the vessel supply necessaries that CANDY APPLE provided to the NOR GOLIATH.[30]

Goliath also alleges that the CANDY APPLE "made multiple deliveries of supplies and equipment to the M/V SHIRLY C[.]"[31] There are only two references to the CANDY APPLE delivering anything related to the SHIRLY C: (1) a single suitcase, on June 7, 2019;[32] and (2) winch parts on May 31, 2019.[33] But, both of these "runs" included primarily GOLIATH-specified cargo/materials/personnel. In other words, the CANDY APPLE was going to the NOR GOLIATH – on the direct order of the "Goliath Administrator" – *regardless* of any SHIRLY C items.

Further, while the CANDY APPLE run to the NOR GOLIATH on June 7, 2019, did include a lone suitcase (stowed *in the cabin* of the CANDY APPLE), it also included a myriad of other *deck* cargo/personnel transported for delivery to and return delivery from the NOR GOLIATH; and the "Goliath Administrator" was specifically directing this run, which was scheduled for delivery of groceries to the NOR GOLIATH.[34] Further, the "CONTAINER ID"

---

[28] ECF 483 at p. 6.

[29] ECF 442-1 at PDF p. 14 (Candy Apple 000133)

[30] Note that the "Item Description" in Epic Purchase Order # 35237 identifies a "Project Name" of "Arena WC548C Platform Removal." This description refers to the West Cameron Platform 548C in the Gulf of Mexico. This platform is the only one where the GOLIATH was stationed during the time of the CANDY APPLE charter. *See* generally ECF 442-14 (NOR GOLIATH vessel logs from May 16-June 11, 2019, listing "WC-548" as the "Project"). Accordingly, references in the various documents to "WC548" are tantamount to references to the NOR GOLIATH (and vice versa).

[31] ECF 483 at p. 7.

[32] ECF 482-13 (Candy Apple 000027)

[33] ECF 482-14 (Goliath 00334).

[34] Exhibit B, Email correspondence, *in globo* (produced natively as Candy Apple 000207 and 000216), at email dated

listed on the cargo manifest for every piece of cargo (*including the suitcase*) is "**WC 548 C/GOLIATH**."[35] And Epic's corresponding DPR shows the CANDY APPLE offloading/ backloading personnel/equipment to/from the NOR GOLIATH, with no mention whatsoever of CANDY APPLE offloading anything to the SHIRLY C.[36] In other words, whether the suitcase was ultimately for the NOR GOLIATH or not, the CANDY APPLE would still have made the same voyage – i.e. provided the same supply service necessaries – to the NOR GOLIATH for all the other cargo/personnel ordered to the NOR GOLIATH by the Goliath Administrator. The suitcase argument is a form-over-substance red herring.

And likewise, as to the winch delivery for repair to the SHIRLY C, the DPRs demonstrate the two following undisputed facts: (1) the NOR GOLIATH could not continue its work due to mechanical problems with the SHIRLY C, requiring a shutdown of all work (including the NOR GOLIATH) for over 8 hours due to "safety" concerns;[37] and (2) the CANDY APPLE, on <u>direct instructions from the NOR GOLIATH administrator</u>, was deployed to carry material, equipment and personnel to the NOR GOLIATH on May 30-31, including the parts necessary to repair the SHIRLY C so that the NOR GOLIATH in turn could re-commence work safely.[38] In other words, while the winch parts may have been for the SHIRLY C, **they were carried by the CANDY APPLE** *on the order of the NOR GOLIATH Administrator*, and thus the transportation services for those parts were provided to the NOR GOLIATH.

---

May 31, 2019 at 2:49 PM (produced natively as Candy Apple 000216), in which the NOR GOLIATH Administrator states that the Goliath scheduled a grocery run by the CANDY APPLE to the GOLIATH for 6/7/2019.

[35] ECF 482-13 (Candy Apple 000027)

[36] Exhibit C, Goliath Daily Progress Report for June 8, 2019, at pp. 1, 5.

[37] ECF 482-14 at p. 1 at 2300 – p. 2 at 0732.

[38] Exhibit B, Email correspondence, *in globo*, (produced natively as Candy Apple 000207 and 000216). Further, the NOR GOLIATH DPR for May 31, 2019, shows that the total time spent unloading the winch items was a mere five minutes, as opposed to the one hour and forty minutes it took to offload/backload the other material/personnel to/from the CANDY APPLE and NOR GOLIATH. *See* ECF 482-14.

8

In sum, the winch parts nominally brought to the SHIRLY C were in fact indirectly supplied "to the NOR GOLIATH," for its benefit *and at its direction* – together with *all the other materials and personnel* that were brought *specifically and directly* "to[/from] the NOR GOLIATH" on the same run – because the NOR GOLIATH was shut down for safety concerns until the SHIRLY C was fixed.  As the Fifth Circuit has recently (and consistently) held, "necessaries" under CIMLA include "most goods or services that are useful to the vessel, **keep her out of danger**, and **enable her to perform her particular function**…[including] items useful to vessel operations and necessary to keep the ship going."[39]

### III. Fuel/Consumables Costs while Servicing the NOR GOLIATH are Lienable.

The fuel/water/lube costs included as part of Candy Apple's lien claim are entirely for fuel/water/lube consumed by the CANDY APPLE in furtherance of its vessel supply necessaries provided to the NOR GOLIATH.  Goliath seems to imply – without actually arguing – that because the fuel/water/lube was not delivered to the NOR GOLIATH for its own consumption, Candy Apple is not entitled to a lien for these costs.  However, the jurisprudence confirms that costs of fuel consumed by a vessel (such as the CANDY APPLE) in furtherance of its supply of necessaries to another vessel (such as the NOR GOLIATH) form part of the lien for such necessaries.[40]

---

[39] *Martin Energy Servs., L.L.C. v. Bourbon Petrel M/V,* 962 F.3d 827, 831 (5th Cir. 2020) (emphasis added).  Even if the Court finds that transportation for the *de minimis* suitcase/winch items is non-lienable, this would not defeat Candy Apple's maritime lien on the NOR GOLIATH, but would rather exclude any segregable costs for the suitcase/winch (of which there are none, because the same transportation services *would have been provided anyway* even without the suitcase/winch).  *See Liverpool & London S.S. Prot. & Indem. Ass'n Ltd. v. M/V ABRA*, 295 F. Supp. 2d 674, 689 (M.D. La. 2003) (maritime lien for necessaries is not precluded by comingling of lien and non-lien items).

[40] *See La. Int'l Marine, L.L.C.*, 2012 WL 4718558, at *6, *adopted as modified*, 2012 WL 13156997 (S.D. Tex. Sept. 24, 2012); *La. Int'l Marine, L.L.C.*, Case No. 11-186, ECF 136 (S.D. Tex. July 19, 2012) (motion of heavy-lift vessel owner for summary judgment as to existence and amount of maritime lien, including "fuel and other supplies for the vessel" consumed during provision of standby heavy-lift services; motion granted in full by the court); *The Rupert City*, 213 F. 263, 270 (W.D. Wash. 1914) ("[Maritime lien for necessaries] must be held to include the reasonable cost of transportation to the ship."); *A/S Dan-Bunkering Ltd. v. M/V Zamet*, 945 F. Supp. 1576, 1581 (S.D. Ga. 1996) ("[T]axes due on fuel supplied to a vessel would constitute a portion of the cost of that fuel and [thus are] included within CIMLA's provision of maritime liens for necessaries."); *Allen v. The Contessa*, 196 F. Supp. 649, 651 (S.D. Tex. 1961) ("cigarettes [for fishing boat crew] are necessaries under" CIMLA).

Additionally, the express terms of Epic's time/bareboat charter of the NOR GOLIATH unequivocally authorize Epic as charterer (on behalf of Goliath as owner of the NOR GOLIATH) to "procure" and pay for all costs of services (including transport services provided by the CANDY APPLE) incurred during the use of the NOR GOLIATH.[41]  Pursuant to that authority, Epic directly placed orders with, and received invoices directly from, Dan Bunkering for the fuel/water/lube consumed by the CANDY APPLE during its service to the NOR GOLIATH.[42]  And tellingly, in addition to authorizing Epic to procure "necessaries," the bareboat guarantee between Epic and Goliath **expressly *acknowledges* Epic's corresponding authority to incur liens against the NOR GOLIATH**.[43]  The costs of the fuel/water/lube consumed by the CANDY APPLE in providing transportation services are legally included as part of Candy Apple's "necessaries" lien under CIMLA for transportation services provided to/earmarked for the NOR GOLIATH.

As repeatedly stated in its Memorandum in Support, Candy Apple is *only* including the charges for fuel/lube/water consumed by the CANDY APPLE during its provision of services to the NOR GOLIATH.[44]  Goliath takes issue with Candy Apple's calculation for fuel usage, arguing that Candy Apple's corporate representative testified that "the vessel logs are the best evidence of the fuel used by the vessel on any given day."[45]  This is misleading.  Micah Meche did not testify that the logs *alone* would show fuel usage, but actually testified that the fuel usage could be determined *by using the logs* to "work out how many gallons of fuel" were used.[46]  This is precisely what Candy Apple has done, as reflected in Meche's declaration in support of Summary Judgment.

---

[41] ECF 442-2, Bareboat Charter (ECF 219-2), PDF p. 6, Art. 10(b), ll. 219-227.

[42] ECF 442-16, Dan Bunkering Order Confirmations; ECF 442-17, Dan Bunkering Invoices.

[43] ECF No 442-3, Charter Guarantee, ¶1.3(d) (expressly stating Epic's liability to Magrem…"to secure the release of the Vessel from any **third party liens**…seizure, detention, attachment, sequestration or custody…").

[44] ECF 443, at Section II. C, and FNs. 32, 41.

[45] ECF 483 at p. 7 n. 26.

[46] Exhibit D, Meche Depo, at p. 32 l. 22-p. 33, l. 2.

                                              Respectfully submitted,

                                              CANDY APPLE, LLC

                                              By its Attorneys,

                                              BAKER, DONELSON, BEARMAN
                                              CALDWELL & BERKOWITZ, P.C.

                              By:    */s/ Samuel D. Gregory*
                                              SAMUEL D. GREGORY

Alan W. Smith (MS Bar No.10345)
asmith@bakerdonelson.com
Samuel D. Gregory (MS Bar No. 104563)
sdgregory@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
MAILING:  Post Office Box 14167
Jackson, Mississippi  39236-4167
PHYSICAL:  One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi  39211
Telephone: (601) 351-2400

## **CERTIFICATE OF SERVICE**

      I, Samuel D. Gregory, do hereby certify that on this day the foregoing document was filed with the Court's ECF system, which served all counsel of record.

      This the 15th day of March, 2021.

                                                */s/ Samuel D. Gregory*
                                                SAMUEL D. GREGORY