IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| ARC CONTROLS, INC. | PLAINTIFF |
| v. | CAUSE NO. 1:19CV391-LG-RPM |
| M/V NOR GOLIATH *in rem,* and GOLIATH OFFSHORE HOLDINGS, PTE. LTD., *in personam* | DEFENDANTS |

*consolidated with*

| | |
|---|---|
| DAN BUNKERING (AMERICA) INC. | PLAINTIFF |
| v. | CAUSE NO. 1:19cv935-LG-RPM |
| NOR GOLIATH in rem; GOLIATH OFFSHORE HOLDING PRIVATE LIMITED in personam; EPIC COMPANIES, LLC in personam; EPIC APPLIED TECHNOLOGIES, LLC | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER DENYING ENTIER
U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the [380] Motion for Summary Judgment filed by the defendant, Entier U.S.A., Inc., in this proceeding filed pursuant to the Commercial Instruments and Maritime Liens Act (CIMLA).  The parties have fully briefed the Motion.  After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Entier's Motion should be denied because material fact questions remain as to the amount of Entier's lien.

## BACKGROUND

Goliath Offshore Holdings PTE. owns the M/V NOR GOLIATH, which is a "self-propelled oceangoing ship equipped with a crane to perform heavy lifts for construction and in some cases platform decommissioning." (Def.'s Mot. Ex. A, ECF No. 418-2). "Decommissioning" refers to the deconstruction and salvage of offshore platforms for oil and gas wells that are no longer productive. *See* 30 C.F.R. §§ 250.1700-1704. At all relevant times, NOR GOLIATH was operating under a bareboat charter with Magrem Investments, Ltd., who subsequently entered a time charter with Epic Companies, LLC. Epic executed a charter guarantee with Goliath. NOR GOLIATH's work for Epic involved lifting the components of an abandoned oil platform and placing them on material barges.

On July 12, 2019, Arc Controls, Inc., sued Goliath i*n personam* and NOR GOLIATH *in rem*, claiming that it was not paid for necessaries it provided to the NOR GOLIATH during the decommissioning. Entier and several others filed claims of intervention. Arc, Goliath, and NOR GOLIATH entered into a settlement agreement, and Arc's claims have been dismissed. (Order, ECF No. 348). The remaining parties filed numerous motions for summary judgment, but some of those parties have subsequently settled their disputes. This Memorandum Opinion and Order addresses the motion for summary judgment filed by Entier, which supplied food and catering services to the NOR GOLIATH between April and August 2019. Entier asserts that its claim totals $456,476.10, but it has not been paid. It seeks a judgment in this amount against the NOR GOLIATH. Goliath and NOR GOLIATH

respond that Entier could not have supplied food and catering services to the NOR GOLIATH after July 19, 2019, because the NOR GOLIATH was arrested on that date. They also argue that part of Entier's claim pertains to food and catering services provided to persons who were not part of NOR GOLIATH's crew.

## DISCUSSION

CIMLA provides that a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel and may bring a civil action in rem to enforce the lien. 46 U.S.C. § 31342(a)(1), (2). The lien "is a special property right in the vessel," which "grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." *Martin Energy Servs., L.L.C. v. Bourbon Petrel M/V*, 962 F.3d 827, 830 (5th Cir. 2020) (quoting *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986)). Charterers, like Epic, "are presumed to have authority to procure necessaries for a vessel." 46 U.S.C. § 31341(a).

In the present case, the only dispute is whether the food and catering services that Entier provided were "necessaries" to the NOR GOLIATH under CIMLA. The term "necessaries" "includes repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4).

> In that regard, necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged. The term, which has a broad meaning, includes most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. These are items useful to vessel operations and necessary to keep the ship going.

*Martin Energy*, 962 F.3d at 831 (internal quotation marks and citations omitted).

In support of its Motion, Entier has produced an affidavit signed by its parent company's Chief Financial Officer, Steven Ritchie,[1] and several invoices that are attached to the affidavit as exhibits.  Ritchie testifies that Entier and Ranger Offshore, Inc. entered into a Master Service Agreement pursuant to which Entier would perform work for Ranger.  Epic subsequently acquired most of Ranger's assets and adopted the MSA between Entier and Ranger.  Ritchie further testifies, "Pursuant to the Epic MSA, between April and August 2019, Entier provided catering services and food to Epic, specifically providing catering services and food to the NOR GOLIATH, which was under charter to Epic." (Entier's Mot., Ex.1, at 2, ECF No. 380-1).  Ritchie then testifies that the five invoices that are attached to his affidavit as exhibits pertain to the provision of catering services and food to the NOR GOLIATH.  Ritchie notes that Epic never paid the invoices.

In support of their argument that some of the expenses submitted by Entier were not necessary to the NOR GOLIATH, the Goliath parties point to Entier's May 31, 2019 daily project report, which lists 129 persons who were on board the NOR GOLIATH on that date.  (*See* Defs.' Ex. B, ECF No. 412-2).  The daily report lists twenty-eight persons who were serving as the NOR GOLIATH's crew while the majority of persons listed worked for Epic and other entities.  Entier seeks payment for providing meals to all of these persons who were on board the NOR GOLIATH.  The Goliath parties also note that Entier's invoices include food and catering

---

[1] Entier's parent company is Entier Limited, "a multinational catering company" that is headquartered in Scotland.  (Entier's Mot. Ex. 1, at 1, ECF No. 380).

services provided to visitors and guests who visited the NOR GOLIATH but did not stay overnight. The Goliath parties assert, "Though these various persons may have been required for *Epic's* project, they simply did not contribute to the mission of the M/V NOR GOLIATH to perform heavy lifts." (Defs.' Mem., at 6, ECF No. 412) (emphasis in original). The Goliath parties also contest Entier's decision to include the cost of one full year of P&I insurance for Entier's employees as well as costs that Entier allegedly incurred after the NOR GOLIATH was arrested. At Entier's 30(b)(6) deposition, Ritchie testified that some of these post-arrest expenses pertained to "WRIST containers" that were not retrieved after the arrest.[2] The Goliath companies argue that these claims for abandoned WRIST containers should not be classified as "necessaries."

In its reply, Entier argues that the question of "[w]hether or not Epic and/or Goliath used all the 'necessaries' and who used them is irrelevant, as long as they were supplied to the vessel in furtherance of its mission, which the undisputed evidence shows they were." (Entier's Reply, at 3, ECF No. 446). Entier explains that NOR GOLIATH's mission was to assist in the platform decommissioning work and providing food and services[3] provided to those occupying the NOR GOLIATH were "necessaries" to the NOR GOLIATH under CIMLA. Entier has also produced a supplemental declaration from Ritchie, in which he testifies that he was mistaken

---

[2] Entier rented food containers from a company called "WRIST."

[3] In its Reply, Entier asserts that it also provided janitorial services to the NOR GOLIATH. Ritchie's affidavit makes no mention of such services, but some of the invoices reference cleaning.

when he previously testified that some of the expenses invoiced pertain to abandoned WRIST containers. He now testifies:

> [T]he August 2019 invoice were for normal charges for rental of containers for the transportation of food to the vessel prior to the date of arrestment. The food (and the containers in which it was supplied) and catering and janitorial services were all provided to the M/V NOR GOLIATH before the date of arrest. To confirm, no containers were left on board the M/V NOR GOLIATH. WRIST's charges were rental charges.

(Entier's Reply Ex. 1, at 2, ECF No. 446-1).

The Goliath parties have provided a Sur-reply to the Court in which they contest the new testimony given by Ritchie because Entier provided no previous notice to the Goliath parties that Ritchie's 30(b)(6) testimony was incorrect, even though Ritchie has testified that he immediately notified Entier's attorney of his mistake after the deposition. The Goliath parties also argue that they had no opportunity to conduct discovery concerning Ritchie's new testimony.

The transport of "supplies and equipment which were essential to sustain the crew and operations aboard" a vessel constitute necessaries. *Trico Marine Operators, Inc. v. Falcon Drilling Co.*, 116 F.3d 159, 162 (5th Cir. 1997) (emphasis added). However, Entier's Motion is solely based on testimony given by its CFO, Ritchie. In his first Affidavit, Ritchie testified that Entier provided services to NOR GOLIATH between April and August 2019, which includes dates after the NOR GOLIATH was arrested. At his deposition, he once again testified that some of the invoices pertained to services or supplies provided after the arrest. Both of these statements seem to conflict with his most recent testimony that all invoices pertain

to services and supplies provided prior to arrest. The remainder of Ritchie's testimony does not provide sufficient information for the Court to determine whether the services invoiced were necessaries. The Court will determine whether food and services provided to individuals who were not part of NOR GOLIATH's crew were necessaries to NOR GOLIATH at trial, when more information is available. Since genuine issues of material fact exist as to the amount of Entier's lien, Entier's Motion must be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [380] Motion for Summary Judgment filed by the defendant, Entier U.S.A., Inc., is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 17th day of May, 2021.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE